# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DORA SCHWARTZ, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:11-cv-0489 |
| | ) | |
| VICTORY SECURITY AGENCY, L.P., | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

**Mark R. Hornak, United States District Judge**

Pending before the Court is the Plaintiffs' Motion for Authorization of Notice to Similarly Situated Persons, ECF No. 41, in this putative collective action for unpaid wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §216(b), along with Defendant's Motion for Summary Judgment. ECF No. 46.[1] For the reasons which follow, these motions will each be denied without prejudice.

The Amended Complaint, ECF No. 20, reveals the following essential facts. Plaintiff Dora Schwarz[2] was regularly employed by Victory Security Agency, Inc. ("Victory Inc."). She

---

[1] The essence of the Motion for Summary Judgment is that Ms. Schwarz's status as a "fill-in" employee makes her unfit to serve as a class representative in a collective action, that her testimony as to her claimed "pre-shift" and "post-shift" work did not support her claims, and that she never worked more than forty hours in a workweek for Victory L.P., depriving her of any claim for unpaid overtime pay under the FLSA in the first instance. ECF No. 47 at 2.

[2] There is a variance between the spelling of Plaintiff's surname in the caption of the Amended Complaint, ECF No. 20 ("Schwartz") and in her deposition, ECF No. 51 ("Schwarz"). The Court is not certain which is correct and therefore for consistency is using the spelling of "Schwarz" as stated in her deposition and on her filed declaration. Certainly, no offense to Plaintiff is intended if this is in error. Further, given that Ms. Schwarz purports to bring this action on behalf of others, the Court has adopted the convention, for purposes of this Memorandum Opinion, of

brings this action against Victory Security Agency, L.P., ("Victory L.P."), which appears from the record to have some commonality of ownership and/or management with Victory Inc., but which the parties jointly advised the Court should not be treated as a "joint employer" with Victory L.P. for purposes of this proceeding. ECF No. 65.[3] However, on three (3) stated occasions in late 2008 and early 2009, Plaintiff worked on a temporary basis for a few days on discrete assignments with Victory L.P. She asserts that she was asked to work "off the clock" on each of these occasions and was, therefore, deprived of wages to which she was entitled under the FLSA.

Plaintiffs' core allegations are that security employees, such as Ms. Schwarz, were required, as a matter of Victory L.P. policy, to show up for work before their scheduled start time without pay in order to engage in a transitional conversation with the employee that they were relieving as they started the shift, and/or to stay after their shift to do the same with the person relieving them. There is also an allegation that employees were obligated by company policy to not record their actual start time upon arrival on employer-provided time sheets, but to instead record on those sheets the scheduled shift starting time, all of which resulted in an understated recordation of actual working time, therefore resulting in a failure to be paid for all hours worked, including, where applicable, statutory overtime. Ms. Schwarz seeks to represent a collection of Victory L.P. employees, defined as Pennsylvania residents employed by Victory L.P. as security guards since April 14, 2008.[4]

---

referring to "Plaintiffs" in the plural. References to Ms. Schwarz in particular are noted as "Ms. Schwarz" or "Plaintiff".

[3] All ECF docket references are to the docket in Civil Action 11-489, the number at which this civil action has been consolidated with a similar action filed against Victory Security Inc. at 11-1267.

[4] The Plaintiffs advance the argument, and provide copious authority, for the proposition that a number of other courts have granted conditional certification, and authorized notice, in cases in which similar allegations of FLSA violations have been made, and on behalf of security guards. ECF No. 18 at 9. That is of course true, but offers little guidance on the question of what course the Court should take in *this* case. Likewise, the Defendant seems to

It is axiomatic, of course, that to represent such a class or collection of employees under the FLSA, Plaintiff must be able to facially demonstrate that she is, at minimum, part of that class, and that those to whom notice is to be sent are sufficiently similarly situated to her (and vice versa) such that she could fairly represent their experiences with the defendant employer and their interests in such litigation. 29 U.S.C. §216(b). This Court has the benefit of a recent examination and explanation of the law applicable to such a decision in *Vargas v. General Nutrition Centers, Inc.,* No. 10-867, 2012 WL 3544733 (W.D. Pa. Aug. 16, 2012).

As set out in *Vargas,* at this stage of the proceedings, the Court is to make a preliminary finding as to whether the employees described in the Complaint can be provisionally categorized as similarly situated to the Plaintiff. The Plaintiff must make a modest factual showing that the proposed recipients of the opt-in notice are in reality similarly situated to Plaintiff and to one another. The Plaintiff must come forward with some evidence, beyond pure speculation, of a factual nexus between the manner in which the Plaintiff was affected by an employer policy and the manner in which it affected those other employees. If that is accomplished, the case is "conditionally certified" as a collective action, and notice to potential participants in the action is authorized. *See generally, Symcyk v. Genesis Healthcare Corp.,* 656 F.3d 189, 192-93 (3d Cir. 2011), *cert. granted,* No. 11-1059, 2012 WL 609478 (June 25, 2012).

In this action, the evidentiary record advanced by Ms. Schwarz in this regard can fairly be described as at best muddled and perhaps more accurately, substantially at odds with itself. As noted above, she is not a regular employee of Victory Inc. She worked on a temporary basis for that entity on only three (3) two or three day stints each around the year-end holidays in 2008. While that temporary status is in and of itself not a bar to bringing this action, or it being

---

contend, in a number of ways, that Ms. Schwarz's status as a temporary employee of Victory L.P. would somehow disqualify her from serving as a representative plaintiff in this case. *See* ECF No. 44. As Plaintiffs correctly point out, that is not accurate, and no authority has been cited for such proposition.

maintained as a collective action with Plaintiff as its champion, the specific facts advanced from the discovery record do raise substantial concerns about whether her experience at Victory L.P. is the least bit representative of the situations of other proposed class members working at that entity or are instead essentially *sui generis,* providing no basis to conclude that there is any level of potential commonality that would permit her to serve as the representative in this action of Victory L.P. employees.

While at this early stage of the proceedings, this Court is not to judge the merits of the claims asserted, *see Vargas,* 2012 WL 3544733, at *4, that truism normally applies because these conditional certification and notice issues routinely arise when there is nothing before the Court other than the bare allegations of the Complaint. In situations such as that presented here, in which the Plaintiff has testified under oath, and has submitted an affidavit in support for her allegations, the Court should not ignore that record.[5] That said, for the reasons expressed above, the Court is of the conclusion that even without considering which party would ultimately prevail on the merits, the record submitted by the parties, particularly including the record developed by the Plaintiff's own words, demonstrates that no matter what standard is applied, she is simply not in a position to make or support the necessary allegations of violation, or of commonality, that would support this Court's direction that the case as to Victory L.P. be "conditionally certified" or that notice be sent.[6]

---

[5] Even under the "modest factual showing" standard, the movant must produce some evidence of a factual nexus between the manner in which the alleged policy affected the movant and the manner in which it affected other employees. *Kuznyetsov v. West Penn Allegheny Health System,* No. 09-379, 2009 WL 1515175 (W.D. Pa. June 1, 2009); *see Outlaw v. Secure Health L.P.,* No. 11-602, 2012 WL 3150582, at *3 (M.D. Pa. Aug. 2, 2012). Further, it is entirely appropriate for the Court to consider the limited discovery record before it in passing on such a motion. *Vargas,* 2012 WL 3544733, at *5.

[6] This conclusion, as will be seen below, is directly related to Plaintiff's admitted lack of knowledge regarding the operations at Victory L.P., and as such, is not determinative of the disposition of similar matters in the related case pending against Victory Inc. at Civil Action 11-1267.

Plaintiff worked for Victory L.P. three times in late 2008 and early 2009.[7] On the first occasion, she was assigned to an account described as "Abcom." Tr. 21. She was uncertain as to exactly how long she worked there, but her own deposition testimony pegs it at either two or three work days. Tr. 27-28. On her first day, she came in to work one-half hour early because it was a new site for her, Tr. 24-25, but at no time on that assignment was she instructed to sign in with her scheduled start time instead of her actual start time (there was no supervisor on site for those shifts) Tr. 80-81. She did not come in early either of the other days she worked at that assignment, she was not mandated to come in early to receive "pass down" instructions from the guard that she was relieving, and no one, let alone anyone in management, told her that she was to arrive early or stay later without being paid for such time. Tr. 29, 34, 36.

The second assignment related to three days of work at a site described as "Martin Brower." Tr. 39. Plaintiff had never worked at that site, and on her first day, she arrived one-half hour before the start of her scheduled shift, supposedly to familiarize herself with the operations of a backup power generator. Tr. 40-42. Thereafter, she arrived at the site about five minutes early simply to avoid being late, left either five minutes early or five minutes late (Ms. Schwartz could not remember which), Tr. 49, and, again, no one at any time advised or directed her to appear early or stay late for the passing down of a report or instructions. Tr. 34, 39-42, 48-49. Again, there was no supervisor on site for those shifts. Tr. 80-81.[8]

---

[7] These facts come from Ms. Schwarz's deposition, filed as of record at ECF No. 51. For ease of reference, citations to that deposition transcript are noted as "Tr. xxx".

[8] As to "Martin Brower" assignment, Ms. Schwartz appeared to have considerable difficulty in recalling which shifts she actually worked at that site (daylight vs. night turn), or whether the times recorded on the timesheets for those shifts were accurate in terms of which part of the day she actually worked. Tr. 40. While coming in early on the first day of this new assignment for the stated purpose would appear to nonetheless be "working time" for FLSA purposes, the record provides no basis for concluding that it is, or was, part and parcel of a general policy requiring early reporting for duty, nor is it indicative of any level of commonality with the experience of others, especially given the very generalized "laundry list" style allegations of the Amended Complaint. ECF. No. 20 at ¶10-11.

The third and last assignment about which Plaintiff testified was a one-day assignment of

at what she described as the "CYS" site. Again, she testified that she was not directed to appear

early or stay late for that assignment, Tr. 49, was not required to sign her time sheet with a time

different than her work start time, Tr. 62, 64, and did not appear on duty early for her shift to

relieve an outgoing employee. Tr. 44-45, 52. However, on the Plaintiff's first day on the "CYS"

site, after advising a supervisor when receiving her assignment that she (Ms. Schwarz) was not

sure where the work site was located, the supervisor offered to lead her, literally "convoy style",

to the location. In order to make that happen, the Plaintiff arrived at a predetermined location

about thirty minutes before her start time, and then followed the supervisor to the work location.

Tr. 43-44. It is uncontradicted in the record that the only reason that the Plaintiff interacted with

any employer representative prior to her start time was that she was uncertain as to where the

work site was, and her employer offered to lead her to the involved location. *Id.*

It appears that Plaintiffs' counsel advances the following theory of the case: Plaintiff

worked for, and was regularly employed by, Victory Inc. Tr. 9. Victory Inc. is the Defendant in a

related case pending at Civil Action 11-1267 in which Ms. Schwarz is also one of two named

Plaintiffs, and in which the same core allegations are made as to Victory Inc. The policies of

Victory L.P. are "the same" as those at Victory Inc., so *a fortiori*, Victory L.P. is in violation of

the law as a matter of broad policy, this case should be "conditionally certified", and the

requested notice should be authorized and sent out now as to the sought-after class of current and

certain former Victory L.P. employees.

It is not so simple. First, by text order on July 6, 2012, this Court gave the parties,

including the Plaintiff, the opportunity to argue and to advance a record supporting the

proposition that Victory L.P. and Victory Inc. should, for purposes of this litigation, be treated as

a single integrated enterprise that conceivably could support the allegation that the operational

6

policies of one presumptively apply to the other. Not only did the parties choose not to take that position, they expressly disclaimed it. ECF No. 65.

Second, an examination of the Plaintiff's deposition in the case against Victory L.P. demonstrates that she has no factual basis to make any comparison of the application of sign in/sign out or "early show up" policies at Victory L.P. with those at Victory Inc., or to relate them one to the other. Tr. at 80-82. Ms. Schwarz stated that she never saw the written policy manual of "Victory" proffered by her counsel in this case, nor the standing "Post Orders" at Victory L.P. Tr. 69-70. Furthermore, she did not know any of Victory L.P.'s policies regarding employees reporting early for duty or staying past their scheduled shift. Tr. 52. She also testified that she did not know what other guards recorded on their timesheets. Tr. 67. In short, there does not appear to be sufficient evidence presented that would allow for a reasonable inference as to the substance and/or existence of the relevant employment policies of Victory L.P., or that Ms. Schwarz's experience is at all representative of that of Victory L.P. employees, even in the most general of terms. *See Taylor v. Pittsburgh Mercy Health System, Inc.*, No. 09-377, 2009 WL 2003354, at *2 (W.D. Pa. July 7, 2009).

Ms. Schwarz recognizes that Victory Inc. and Victory L.P. are two separate entities, and an examination of the deposition record reveals her very high level of uncertainty as to what she believes about the employment experience at each of them. Tr. 9, 80-81. As a non-supervisor, she is plainly not obligated to enforce such policies at either company, and her stated experiences at Victory L.P. (in the three (3) short stints that she worked there) generate no basis for any finding as to actual Victory L.P. policies regarding early "show ups" for duty, staying after

shifts off-the-clock, or the completion of time sheets, or that any such policy or policies are commonly applied to anyone. [9] As to her limited work at Victory L.P., Plaintiff was unequivocal in her testimony that she was not told by anyone to falsely record her hours of work, to show up early or stay late as a matter of stated policy of that entity, to engage in "off-the-clock" pass-down reporting. Instead, her testimony was that on the first day of each of two new assignments, she came in thirty minutes before her stated start time. According to Ms. Schwarz, this was a one-time occurrence at each such assignment.

On the first day of the third (and last) of her assignments, solely in order to avoid getting lost and thereby being late for work, she accepted her supervisor's offer to have her follow the supervisor to the work site in her own car. The fact that such rendezvous occurred before her shift was to start does not make it, in and of itself, a stated violation of the FLSA, but was consistent with common sense. Further, such a one-time event is not plausibly representative of any unlawful policy or the common experience of anyone, absent some record evidence that this employer (and not Victory Inc.) commonly, by written policy or otherwise, required and directed employees to come to a meeting point away from the work site on the first day of work to be led to the site by a supervisor to avoid becoming lost. While the Court is cautioned to not reach the relative strength of the merits of an alleged FLSA claim at this early stage, on this record, there simply is no basis to conclude that there has been any violation of the law at all as to this event, or that Ms. Schwartz's experience on that occasion is common to anyone else.

The Court notes that while it is true that the burden of a plaintiff at the early stage of an FLSA case is light, it is not weightless. Here, while there may in fact be a person that has been the victim of a policy of unlawful wage-and-hour practices at the hands of Victory L.P., on this

---

[9] Ms. Schwarz did testify that she believed that her "off time" for recordation on a time sheet was when she was "done with her job". Tr. 64. She also testified that she believed that she was to write down the start time based on when she was on the job, doing the job. Tr. 62.

record, there is no basis that would support a conclusion that such person is this Plaintiff, or that her situation is the least bit representative of that of any Victory L.P. employee. This is not a case in which the Court is, in effect, weighing or balancing the evidence advanced by the opposing parties. Nor is it one in which the Court is relying on competing factual averments of those parties to conclude that while others may have been affected by a common policy they are insufficiently small in number to support conditional certification or notice. *Cf. Basco v. Wal-Mart Stores Inc.*, No. 00-3184, 2004 WL 1497709, at*8 (E.D. La. July 2, 2004).

Instead, the facts presented by the Plaintiff herself offer only the thinnest of reeds to support a claim for which she herself is entitled to relief and provide no basis to support an allegation that her experience is representative of any other situation or of that of Victory L.P. employees more generally. In fact, Ms. Schwarz ultimately testified that all of her deposition testimony regarding asserted job site practices related to her work at Victory Inc., not Victory L.P., Tr. 73-76, 77-70, 81, and that she had no knowledge of what any other employee at Victory L.P. did in regards to reporting for duty or recording time. Tr. 67.[10]

Only by permitting assumptions that approach speculation that Victory L.P.'s policies are the same as those of Victory Inc., and that the policies of Victory Inc. are unlawful can any logical connection be made between her testimony and the generalized allegations of the Amended Complaint against Victory L.P. Yet her own testimony includes her candid admissions

---

[10] Plaintiffs also rely on the deposition testimony of Richard Hinch, a Vice-President of Victory L.P., ECF No. 45, Ex. E, for a number of propositions, principally that the two Victory entities operated with high levels of intentional overlap as to operational policies and in admitted violation of the FLSA. ECF No. 45 at 4-5. An examination of the actual deposition transcript reveals that this is not correct. Hinch testified that he could not speak as to L.P. operational policies or any overlap with those of Victory Inc. in 2008, but only as to the year or two before his 2012 deposition, Hinch Tr. at 9-11, and that he could not "honestly say" that any commonality of policies was a "fact". Tr. at 12. He directly testified that he could not say that the Victory companies used the same form of timesheet or policy manual in 2008, Hinch Tr. at 49-50. Further, contrary to the contentions of the Plaintiffs in their summary of his testimony in ECF No. 45, rather than admitting that either Victory company directed, expressly or by implication, that employees not record all of their work time or that they were not paid for extra time worked, his testimony was that employees were paid for all time worked, after it was verified. Hinch Tr. at 62-64, 91-92. In short, Hinch's testimony does not support a conclusion that Ms. Schwarz's observations about her work, and that of others at Victory Inc., necessarily carried over to work at Victory L.P.

9

that she has no real basis to know what Victory L.P.'s policies are or how they are applied generally.[11] In short, the testimony of the Plaintiff Ms. Schwartz offers no basis for this Court to conclude that conditional certification or notice is proper as to Victory L.P., even with the most modest of burdens being required to be met. There is simply no record support for a conclusion that this Plaintiff had experience in her three very short assignments with Victory L.P. that could be (1) representative (2) of the application of any unlawful policy (3) of that specific entity.[12]

Ms. Schwarz does appear to have significant experience working at Victory Inc. and that experience, in addition to her personal observations of the work that she and others performed over the years for that entity, may well support conditional certification and notice as to claims against that entity. That said, given her unequivocal testimony that the "practices" that she observed related not to Victory L.P. but to Victory Inc., that she did not know how other employees at Victory L.P. recorded time, or whether or why they reported for duty early or stayed late, her statements lack the minimum level of personal knowledge or observation that

---

[11] The transcript of Ms. Schwarz's deposition reflects her counsel's interposition of repetitive objections "to the form of the question" and "speaking objections" which can suggest a response to the witness when this topic came up. *See* Tr. at 36, 78-81, 85-88. The Court, having examined that deposition transcript in detail and with care, is quite comfortable in observing that it appears that none of the questions so objected to was the least bit inappropriate or ambiguous. A review of the deposition as a whole also leads to the conclusion that Ms. Schwarz appeared to be trying her best to answer the questions asked but had little, if any, personal knowledge about the general operations or policies at Victory L.P., as opposed to Victory Inc.

[12] Plaintiffs have also supported their Motion for Notice with an affidavit from Ms. Schwarz that purports to set forth her personal knowledge of the policies of Victory L.P. ECF Nos. 41-1, 55. The Court's careful review of that affidavit reveals that it offers no actual support for the position that Plaintiffs take in this case as to the supposed convergence of the policies of Victory L.P. and Victory Inc. That is because that affidavit, intentionally or otherwise, persistently conflates the references to Victory L.P., and Victory Inc. by using the unspecified term "Victory Security Agency" (without noting which entity is being referred to) in such a way as to offer no valid testimonial support for assertions as to either such entity. The affidavit, while noting Ms. Schwarz's basis for testimony as being her employment by Victory L.P., then uses the term "Victory Security Agency" without differentiating between her minimal service at Victory L.P. and her more substantial work at Victory Inc. Further, while it appears beyond dispute that she worked at Victory L.P. on only three occasions in late 2008/early 2009, the affidavit discusses her work for "Victory Security Agency" back to 2006. While this could be emblematic of some level of litigation caginess on the part of Plaintiffs' counsel, it is also possible that it represents the same overall uncertainty and contradiction as to the entities involved, and what she did or did not know about their operations/policies, that pervades Ms. Schwarz's deposition testimony. *Compare* Tr. 54-55 with Tr. 73-76, 80-81. Either way, that affidavit does not change the Court's analysis and conclusion that Ms. Schwarz's testimony, no matter the format, does not support the conclusion that her experience cannot serve as the basis for notice authorization or for this matter to proceed conditionally as a collective action as against Victory L.P.

would support conditional certification or notice as to Victory L.P. in *this* case. This is particularly so given her testimony that her stated observations related to "all three years" of her work, and not necessarily her three short assignments with Victory L.P. The record before the Court leads to the conclusion that only by a highly speculative level of bootstrapping can it be said that she, and her experience at Victory L.P., are, or even could be, representative of the policies and practices of Victory L.P.

Because discovery in this case may have revealed one or more persons whose experience could support the claims asserted and could serve as the basis for this case proceeding further against that entity, the Motion for Authorization for Notice is denied without prejudice, and Plaintiffs are given until October 26, 2012 to amend the Amended Complaint in this case, but only if there is a sufficient factual and legal basis to do so, in order to support a representative claim against Victory L.P. In light of this disposition of the Plaintiffs' Motion for Authorization for Notice, the Defendant's Motion for Summary Judgment is denied without prejudice.[13]

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: September 28, 2012

cc:     All Counsel of Record

---

[13] The court believes that this is the better course at this stage of the proceedings, given the quasi-representative nature of this civil action. Further, on the merits of the summary judgment motion, the record does not appear to be sufficiently developed to grant such a motion on the basis of the argument advanced by the Defendant that her testimony regarding "pre" and "post" shift work is fundamentally at variance with the allegations of the Amended Complaint. ECF No. 47 at 2. On the other hand, the fact that she did not work in excess of forty hours in any workweek for Victory L.P. does call into question whether she has any FLSA claim at all against Victory L.P., or whether she could serve as the class champion as to FLAS claims against that entity.